**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nichola J Piccolo, | No. CV-22-02007-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Mayo Clinic, et al., | |
| Defendants. | |

Defendant Mayo Clinic Arizona ("Defendant") seeks summary judgment on all of Plaintiff Nichola Piccolo's ("Plaintiff") claims.  (Doc. 65).  The matter is fully briefed. (Docs. 69–70).  The Court will enter summary judgment on Plaintiff's disparate treatment theory but not her failure to accommodate theory.

## I.    Background[1]

Plaintiff worked as a Registered Nurse for Defendant Mayo from August 2014 until March 2022.  (Doc. 65 at 2; Doc. 69 at 1).  Mayo notes that Plaintiff "worked with patients about to undergo, or immediately recovering from, surgical procedures, including high-risk surgeries such as organ transplants."  (Doc. 65 at 2).  Defendant also notes that, in July 2021, Piccolo injured her back at work and she was placed on extended leave and given worker's compensation.  (*Id.*)

After the start of the COVID-19 pandemic, Mayo initiated a voluntary vaccine participation program to help increase vaccination rates among employees; but later

---

[1] The following facts are undisputed, unless stated otherwise.

announced a vaccine mandate in October of 2021.[2] (Doc. 65 at 3). Mayo's policy required employees to become vaccinated or seek an exemption to continue their employment. (*Id.*) The only acceptable exemptions Mayo recognized were for medical or religious reasons. (*Id.*) Plaintiff sought a religious exemption. (Doc. 65 at 5; Doc. 69 at 4).

Defendant states that it "developed a multi-step process to approve, deny, or escalate Accommodation Requests." (Doc. 65 at 3). It sums up its process as follows:

> Reviewers were instructed to assess the totality of each Accommodation Request to determine whether: (1) the individual identified a religious belief; (2) the religious belief was sincerely held; and (3) the sincerely held religious belief conflicted with the Policy's vaccination requirement. Reviewers spent as much time as necessary to consider each request's unique content. No time limits, quotas, or targets applied for approval or denial. No preference or bias applied for or against any particular religious faith or belief; reviewers considered only the sincerity of religious beliefs and whether they conflicted with the Policy.

> At the first step, an individual reviewer would randomly select an Accommodation Request from a shared inbox and analyze it based on the factors above. Other than name, job site and employee number, the reviewer did not review demographic information about the employee, such as age, race, disability or leave status. The reviewer would approve or deny the Accommodation Request or, in some instances, escalate the request for further consideration. If an employee's Accommodation Request was denied, the employee could submit a Religious Accommodation Reconsideration Form ("Reconsideration Request").

> Trained reconsideration review teams reviewed each Reconsideration Request. The review team reviewed the original Accommodation Request and the notes of the reviewer as well as the Reconsideration Request. The review team did not review other demographic information about the employee, such as age, race, disability or leave status. The review team looked for additional, clarifying information that would justify overturning the denial.

> If the review team denied the Reconsideration Request, Mayo sent an automated notification to the employee advising of the need to become vaccinated or be placed on a Final Written Warning.

---

[2] Mayo states that it announced its vaccine mandate on October 13, 2021, in anticipation of the Biden administration's Centers for Medicare & Medicaid Services ("CMS") Mandate for healthcare workers, which required employees to be vaccinated but allowed for exemptions for disabilities and sincerely held religious beliefs. (Doc. 65 at 1–3).

1  (*Id.*)  Before returning to work from her back injury, Plaintiff filed a request for a religious

2  exemption to Defendant's vaccine mandate on November 7, 2021.  (Doc. 65-4).  The Court

3  will restate the relevant portions of this exemption request below:

| # | Question | Response |
|---|----------|----------|
| 1. | What is the sincerely held religious belief or practice for which you are seeking accommodation? | Based on my understanding of Title VII of the Civil Rights Act, the First Amendment to the United States Constitution, I choose to exercise my right to religious exemption from being required to be vaccinated using Covid-19 shots. My personal convictions are inspired by my study and understanding of the Bible. No one should be made choose between their faith and their livelihood. |
| 2. | Please provide any information that will help us to determine that your belief is sincerely held with the strength of traditional religious views.  For example, does this belief affect any other aspect of your life? | I would simply like to say that I'm deeply offended by the very question itself! The fact that some random person or group, none of which know me, will be tasked with deciding if I'm devoutly religious or not is a sad. To whoever may be reading this, please know that you are in no position to judge me, my religious beliefs, or my level of devotion to those beliefs! As far as my religious beliefs are concerned, I do not answer to you, I answer only to God! |
| 3. | Has your religious belief that is preventing you from receiving COVID-19 vaccination changed over time? If yes, explain how it has change, when it changed and why. | No |
| 4. | Describe the conflict between the religious belief or practice and receiving COVID-19 vaccine.  Provide as much specificity as possible and identify all areas of conflict. | According to Scripture my body is created in the image of God (Genesis 1:27, Genesis 9:6, Genesis 5:1, 1 Corinthians 11:7, Colossians 3:10, James 3:9) and is a temple in which God's Spirit dwells. That temple is considered sacred, and we are admonished to do nothing to destroy that temple (1 Corinthians 3:16-17, 1 Corinthians 6:19-20).  I am religiously, morally, and ethically opposed to receiving COVID-19 vaccine. |
| 5. | Does your religious belief prevent you from receiving all vaccines or only some vaccines? | Some But Not All Other Vaccines |
| | a.  Please specify (If your religious belief prevents you from receiving only specific vaccines, please explain why. For example, if there is something about the way that some vaccines are developed or manufactured that prevents you from receiving them, please identify what that is.) | I don't randomly just take vaccines. I believe that receiving vaccines is a personal decision to seek personal guidance from the Holy Spirit (Acts 2:38-39; Romans 8) and search the Scripture myself for related truths (Romans 15:4). If I fail to submit to the personal convictions that the Holy Spirit and Scripture has impressed upon me, I will be sinning against God. |

(Doc. 65-4 at 2–3).[3]  Plaintiff also stated that she is a Roman Catholic, a faith she has been a part of since birth, and that her accommodation request is based, in part, on the use of fetal cell lines.[4]  (*Id*. at 4–5).

Plaintiff's request was randomly assigned to a reviewer who denied her request because it contained "[i]nsufficient evidence of a sincerely held religious belief," and "indicated[d] that it is a personal decision to seek guidance." (Doc. 65 at 5).  On November 23, 2021, Plaintiff submitted a Reconsideration Request, which was also randomly assigned to a review team.  (*Id*. at 6).  The review team reviewed Plaintiff's original Accommodation Request, the denial and the Reconsideration Request.  (*Id*.)  The review team determined that Plaintiff's Reconsideration Request "still [did] not have a strong religious tie," was still "mostly concern[ed] about side effects," and was, therefore, "[s]ecular in []nature."  (*Id*.)  Defendant specifically notes that Plaintiff's request was largely based on her "concern about the vaccines' content, including her unsupported belief that they contain 'neurotoxins, hazardous substances, carcinogens, and chemicals wastes.'" (*Id*. (citing Doc. 65-7)).  Plaintiff's reconsideration request specifically states that:

> I am appealing the denial of my religious accommodation due to my deeply held religious believes. Based on the Information I provided, I did not meet the "criteria" for a religious exemption. But given the fact I was limited to "500" characters in order to "convince" someone who does not know me that I am deeply rooted in my faith is absurd. My devotion and faith in Christ has grown very strong over the years. Reading and studying the Bible I know God gave me the passion, purpose, and gift of being a nurse. My discernment is that in accordance with God's Word and the creation of the human body, putting [the] COVID-19 vaccine into my body would imply that I am not honoring God with my body nor am I trusting the natural process that God has created. As in 1 Corinthians 6:19-20 clearly states, "you are not your own, you are bought at a price therefore honor God with your bodies." My trust and faith in God are my daily lifelong journey, how do I put into words

---

[3] The Court notes that Plaintiff's Accommodation Request and Reconsideration Request contain numerous spelling errors which the Court has left alone for accuracy.

[4] Question 8 of Mayo's form religious accommodation request asks if the requester's religious accommodation is "based in part on the use of fetal cell lines?" (Doc. 65-4 at 4). Part "b" of this question asks whether the requester will discontinue the use of several medications, such as Tylenol and Advil, as they are also derived from fetal cell lines. Plaintiff answered "Yes, I will act consistent with my religious belief." (*Id*.)

my dedication to God and his teachings for someone else to judge. I have been praying for guidance and God's Word clearly spokes to me regarding placing my faith in him.

I have received vaccines in the past. Due to peer pressure in 2008 I took the flu vaccine at work (which I typically don't take) and had a sever[e] localized reaction for which now is listed as an allergy per Occupational Health. Years later again due to peer pressure at work I tried the flu vaccine again, even with pre-medicating I had a horrible, localized reaction. I know vaccines contain neurotoxins, hazardous substances, carcinogens, and chemical wastes that are proven harmful to the human bloody. According to scripture we are not permitted to treat the body In a way that we believe may or will harm it. Vaccines not only have the potential to harm the body but, they have done so from minor skin rashes to death.

Vaccine ingredients corrupts the sanctity of the blood with the unnatural components not created by the hand of God. My faith views one's blood as sacred and my body is a gift from God that I will not destroy. While the COVID-19 vaccines have been fully approved by the FDA, there is still ZERO data available as to the long-term safety of this vaccine. I refuse to accept the unknown risk of injecting something that is potentially harmful into the "temple" God has given me! Furthermore, by "accepting" the COVID-19 vaccine I am not only violating my deeply held, Scripture-based religious beliefs as described in this appeal. The religious, moral, and ethical dilemma I have been placed in has only made my faith in God stronger.

Additionally, I understand that the specific cells used in the development of COVID-19 vaccines were not directly obtained from an aborted fetus, but the cell lines ARE directly descended from those aborted cells. Therefore, considered by me and our Creator to be "impure". Based on various passages of Scripture (Psalm 22:10, Psalm 139:13-16, Proverbs 31:8, Exodus 20:13, Isaiah 44:24, Isaiah 49:1, Jeremiah 1:5, Job 31:15, Luke 1:15) require me to reject the practice of abortion at all stages of development.

The failure of Mayo Clinic to accept my religious exemption appeal will show me that I am being discriminated against and places great pressure on me to stand up for what I believe is right and just. Never has my conviction been so strong, but God is good, and he will see me through this challenging time. I make this request for the glory of God and consistent with my faith. Thank you for your consideration of it.

(Doc. 65-7 at 2).

Upon returning to work in February of 2022, Plaintiff was terminated due to her non-compliance with Defendant's vaccine mandate. (Doc. 65 at 7; Doc. 69 at 1). Mayo

says it terminated Plaintiff's employment because she failed to comply with its policy after she requested, but did not receive, a religious accommodation. (Doc. 65 at 2). It also states that it denied Plaintiff's request because she was unable to demonstrate a sincerely-held religious belief that conflicted with the Policy. (*Id.*)

Believing her termination was discriminatory in nature, Plaintiff brought the following claims against Defendant: (1) discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e; (2) discrimination in violation of the Arizona Civil Rights Act ("ACRA"), A.R.S. § 41-1463(B); (3) discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623; and (4) wrongful termination in violation of A.R.S. § 23-1501(c).[5] (Doc. 1 at ¶¶ 44–95). The parties previously stipulated to the dismissal of Plaintiff's third and fourth causes of action—leaving only her claims for discrimination. (Docs. 63–64). Now, Defendant seeks summary judgment on Plaintiff's discrimination claims. (Doc. 65 at 8).

## II.    Legal Standard

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" when a reasonable jury could return a verdict for the nonmoving party. *Id.* Courts do not weigh evidence to discern the truth of the matter; they only determine whether there is a genuine issue for trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994). This standard "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250. "If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." *Id.* at 250–51 (citing *Wilkerson v. McCarthy*,

---

[5] Plaintiff voluntarily dismissed her claims for age discrimination and wrongful termination, leaving only her Title VII and ACRA discrimination claims. (Docs. 63–64).

336 U.S. 53, 62 (1949)).

The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Once shown, the burden shifts to the non-moving party, which must sufficiently establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). Where the moving party will have the burden of proof on an issue at trial, the movant must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail "merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex Corp.*, 477 U.S. at 323).

If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or otherwise as provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e). The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial. *Celotex*, 477 U.S. at 322. The summary-judgment stage is the " 'put up or shut up' moment in a lawsuit, when the nonmoving party must show what evidence it has that would convince a trier of fact to accept its version of events." *Arguedas v. Carson*, 2024 WL 253644, at *2 (S.D. Cal. Jan. 22, 2024) (citation omitted). In fact, the non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in [its] favor." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party. *See T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). / / /

1  **III.    Discussion**

2        Title VII's anti-discrimination provision makes it unlawful for an employer to

3  "discriminate against any individual with respect to his compensation, terms, conditions,

4  or privileges of employment, because of such individual's . . . religion[.]" 42 U.S.C. §

5  2000e-2(a)(1).[6]    Title VII defines "religion" to "includ[e] all aspects of religious

6  observance or practice, as well as belief, unless an employer demonstrates that [it] is unable

7  to reasonably accommodate to an employee's . . . prospective observance or practice

8  without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

9  A Title VII religious discrimination claim may be brought under several possible theories,

10  including failure to accommodate religious beliefs or disparate treatment on account of

11  religion.  *Bodett v. Coxcom, Inc.*, 366 F.3d 736, 742 (9th Cir. 2004) (citing *Peterson v.*

12  *Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004)).

13        Defendant seeks summary judgment on Plaintiff's discrimination claims.  (Doc. 65).

14  Defendant states that it is unclear whether Plaintiff intends to assert a disparate treatment

15  or failure to accommodate theory, but that neither survives summary judgment.  (*Id*. at 8).

16  Plaintiff responds that she is advancing both a direct discrimination theory and failure to

17  accommodate theory under her disparate treatment cause of action.  (Doc. 69 at 3).

18        Plaintiff has also filed an Unopposed Motion for Leave to File Exhibits Under Seal

19  (Doc. 67).  Plaintiff seeks to file four exhibits under seal, Exhibits A through D, which

20  were disclosed as "confidential" by Defendant.  (*Id*. at 1).  The Court will address each

21  theory, beginning with Plaintiff's failure to accommodate theory.

22        **A.    Failure to Accommodate**

23        An employee who claims religious discrimination based on an employer's failure to

24  accommodate their religious beliefs or practices bears the initial burden of setting forth a

25  prima facie case of religious discrimination.  *Berry v. Dep't of Soc. Servs*., 447 F.3d 642,

26  655 (9th Cir. 2006). To establish this prima facie case of religious discrimination under a

27
─────────────
[6] Title VII and the Arizona Civil Rights Act utilize "the same framework of analysis."
28  *Bodett v. CoxCom, Inc*., 366 F.3d 736, 740 (9th Cir. 2004).  So, the Court will analyze both
claims under the standards set forth for Title VII claims.

failure to accommodate theory, the employee must demonstrate "that (1) she had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) she informed her employer of the belief and conflict; and (3) the employer threatened her or subjected her to discriminatory treatment, including discharge, because of her inability to fulfill the job requirements." *Tiano v. Dillard Dept. Stores, Inc*., 139 F.3d 679, 681 (9th Cir. 1998) (citation omitted); *see also Slater v. Douglas Cnty*., 743 F. Supp. 2d 1188, 1191 (D. Or. 2010) (citations omitted). If the employee succeeds in establishing a prima facie case, the burden shifts to the employer to prove that it either "initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Tiano*, 139 F.3d at 681 (citations omitted).

### 1.      Bona Fide Religious Belief

The Supreme Court and the Ninth Circuit have "cautioned against opining on the reasonableness of an individual's asserted religious belief, explaining that a court should avoid 'second-guessing the reasonableness of an individual's assertion that a requirement burdens her religious beliefs.' " *Weiss v. Permanente Med. Grp., Inc*., 738 F. Supp. 3d 1217, 1222 (N.D. Cal. 2024) (quoting *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1223 (9th Cir. 2023)); *see also Kather v. Asante Health Sys*., 2023 WL 4865533, at *5 (D. Or. July 28, 2023) (declining to question the legitimacy of a plaintiff's belief that "low energy constituents in the COVID-19 vaccine would lower the vibrations of her Spirit being, which is opposite to her purpose in life to raise the vibrations of planet [E]arth" (internal quotations and alterations omitted)). "Instead, the 'narrow function' of the court in this instance is to determine whether the espoused belief represents an 'honest conviction.' " *Id*. (quoting *Bolden-Hardge*, 63 F.4th at 1223). The Ninth Circuit has stated that Title VII protects more than practices or tenets specifically mandated by an employee's religion:

> [T]he very words of [Title VII] ("*all* aspects of religious observance and practice . . .") leave little room for such a limited interpretation . . . [T]o restrict the act to those practices which are mandated or prohibited by a tenet

1    of the religion, would involve the court in determining not only what are the
2    tenets of a particular religion, . . . but would frequently require the courts to
3    decide whether a particular practice is or is not required by the tenets of the
4    religion. [S]uch a judicial determination [would] be irreconcilable with the
     warning issued by the Supreme Court in *Fowler v. Rhode Island*, 345 U.S.
5    67, 70 (1953), "[I]t is no business of courts to say . . . what is a religious
     practice or activity."

6    *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993) (citations omitted).  "A sensible

7    approach would require only enough information about an employee's religious needs to

8    permit the employer to understand the existence of a conflict between the employee's

9    religious practices and the employer's job requirements."  *Id.* (citing *Redmond v. GAF

10   Corp.*, 574 F.2d 897, 901 (7th Cir. 1978) (informing employer that "I [am] not able to work

11   on Saturday because of my religious obligation" is sufficient)).  "Any greater notice

12   requirement would permit an employer to delve into the religious practices of an employee

13   in order to determine whether religion mandates the employee's adherence.  If courts may

14   not make such an inquiry, *see Fowler*, 345 U.S. at 70[]; *Redmond*, 574 F.2d at 900, then

15   neither should employers."  *Id.*

16         Whether the employee's belief is bona fide depends on "whether it is: (1) sincerely

17   held and (2) religious, in the employee's scheme of things."  *Ashcroft v. S. California

18   Permanente Med. Grp.*, 2025 WL 268387, at *4 (S.D. Cal. Jan. 22, 2025) (citing *Africa v.

19   Commonwealth of Pa.*, 662 F.2d 1025, 1030 (3d Cir. 1981)).  "Three indicia can determine

20   whether a religion exists. A religion: (1) addresses 'fundamental and ultimate questions

21   having to do with deep and imponderable matters'; (2) is a belief-system, comprehensive

22   in nature; and (3) has certain recognizable formal and external signs."  *Id.* (quoting *Africa*,

23   662 F.2d at 1032); *see also Stephens v. Legacy-GoHealth Urgent Care*, 2023 WL 7612395,

24   at *4 (D. Or. Oct. 23, 2023)  (finding the *Africa* factors provided helpful guideposts for

25   analyzing whether a belief was religious in nature under a Title VII framework).  "While

26   the belief should be 'sincerely held,' it 'need not be consistent or rational to be protected

27   under Title VII.' "  *Id.* (quoting *Keene*, 2023 WL 3451687 at *2.

28         However, this "does not mean that courts must take plaintiffs' conclusory assertions

of violations of their religious beliefs at face value." *Bolden-Hardge*, 63 F.4th at 1223 (9th Cir. 2023); *see also Kather*, 2023 WL 4865533, at *5 ("[V]ague expressions of sincerely held Christian beliefs alone cannot serve as a blanket excuse for avoiding all unwanted employment obligations."). Title VII does not protect medical, economic, political, social, or personal preferences. *See Tiano*, 139 F.3d at 682 (9th Cir. 1998) ("Title VII does not protect secular preferences"). "In addition, the [C]ourt must distinguish between conflicts that are 'rooted in religious belief' as opposed to ones based on " '*purely* secular' philosophical concerns." *Prodan v. Legacy Health*, 716 F. Supp. 3d 1044, 1049 (D. Or. 2024) (quoting *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981) (emphasis added)).

### 2. Plaintiff's Religious Belief Conflicted with Defendant's Policy

Defendant argues that Plaintiff "cannot establish the first element of a prima facie failure to accommodate claim because she has not demonstrated a bona fide religious belief that conflicted with the Policy." (Doc. 65 at 13). It also argues that, if Plaintiff can demonstrate this element, she cannot establish any conflict with the Policy that was religious in nature. (*Id*. at 15). Plaintiff argues that the sincerity of her bona fide religious belief against getting the COVID-19 vaccine is a factual issue for the jury. (Doc. 69 at 5). The Court finds that there are factual issues which preclude a finding of summary judgment here.

Plaintiff, in her Amended Complaint, alleges that she holds sincere Christian beliefs against getting the COVID-19 vaccine and that Defendant made exceptions for some faiths, but not for Plaintiff. (Doc. 12 at ¶¶ 43–44). In her accommodation request, Plaintiff detailed that her "personal convictions are inspired by my study and understanding of the Bible." (Doc. 65-4 at 2). She also stated that this belief is based on various passages from the Bible and that her body is a sacred temple. (*Id*.) Plaintiff agreed in her form request that her sought accommodation request is based, in part, on the use of fetal cell lines.[7]

---

[7] "COVID-19 vaccine manufacturers used '[f]etal cell lines . . . grown in a laboratory . . . [that] started with cells from elective abortions that occurred several decades ago' to at least test vaccine efficacy." *Keene v. City & Cnty. of San Francisco*, 2023 WL 3451687, at *2 (9th Cir. May 15, 2023) (quoting *COVID-19 Vaccine: Addressing Concerns*, UCLA HEALTH, https://www.uclahealth.org/treatment-options/covid-19-info/covid-19-vaccine-

(Doc. 65-4 at 4).  She also agreed that she would stop using medications such as Tylenol and Aspirin for the same reason: the use of fetal cell lines.  (*Id.*)

Mayo states in its Motion that Plaintiff did not explain the conflict between her religious beliefs and receiving COVID-19 vaccine.  (Doc. 65 at 5 n.5).  However, Plaintiff stated that:

> According to Scripture my body is created in the image of God (Genesis 1:27, Genesis 9:6, Genesis 5:1, 1 Corinthians 11:7, Colossians 3:10, James 3:9) and is a temple in which God's Spirit dwells. That temple is considered sacred, and we are admonished to do nothing to destroy that temple (1 Corinthians 3:16-17, 1 Corinthians 6:19-20). I am religiously, morally, and ethically opposed to receiving [the] COVID-19 vaccine.

(Doc. 65-4 at 2).  In her reconsideration request, Plaintiff also detailed that "I refuse to accept the unknown risk of injecting something that is potentially harmful into the 'temple' God has given me! Furthermore, by 'accepting' the COVID-19 vaccine I am not only violating my deeply held, Scripture-based religious beliefs as described in this appeal." (Doc. 65-7 at 2).  She also stated that:

> Additionally, I understand that the ***specific cells*** used in the development of COVID-19 vaccines were not directly obtained from an aborted fetus, but ***the cell lines ARE directly descended from those aborted cells***. Therefore, considered by me and our Creator to be "impure". Based on various passages of Scripture (Psalm 22:10, Psalm 139:13-16, Proverbs 31:8, Exodus 20:13, Isaiah 44:24, Isaiah 49:1, Jeremiah 1:5, Job 31:15, Luke 1:15) require me to reject the practice of abortion at all stages of development.

(*Id.*) (emphasis added).

Based on the above evidence, Plaintiff easily meets her prima facie burden to show that she had a bona fide religious belief which conflicted with Defendant's vaccination policy.  *See* U.S. Equal Emp. Opportunity Comm'n, EEOC-CVG-2021-3, Section 12: Religious Discrimination, § 12–I(A)(2) (Jan. 15, 2021) ("[T]he sincerity of an employee's stated religious belief is usually not in dispute and *is generally presumed or easily established*.") (emphasis added).  Plaintiff informed her employer that she is a Roman

---

addressing-concerns [https://archive.is/WqUPW] (last visited Apr. 28, 2023)).    "The COVID-19 vaccines are, albeit remotely, 'derived' from aborted fetal cell lines."  *Id.*

Catholic and noted in her reconsideration request that she was opposed to receiving the vaccine because of the use of fetal cell lines. (Doc. 65-7 at 2). She specifically stated that this was due to "various passages of Scripture (Psalm 22:10, Psalm 139:13-16, Proverbs 31 :8, Exodus 20:13, Isaiah 44:24, Isaiah 49:1, Jeremiah 1:5, Job 31:15, Luke 1:15)." (*Id.*) She also stated that her faith requires her to "reject the practice of abortion at all stages of development." (*Id.*)

Drawing all inferences in the light most favorable to Plaintiff, the evidence before the Court demonstrates that there is a genuine dispute of material fact regarding Plaintiff's bona fide religious belief. *Celotex*, 477 U.S. at 322–23. To find otherwise, the Court would necessarily have to weigh conflicting evidence and make credibility determinations—which it cannot do at this stage. *See T.W. Electric Service, Inc.*, 809 F.2d at 630-31. In sum, Plaintiff has shown that a jury could reasonably find that her belief is sincerely held and that it is religious in the employee's scheme of things. *See Ashcroft*, 2025 WL 268387, at *4; *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387.

Of note, Defendant also argues that Plaintiff's objections were not religious, but secular, in nature. (Doc. 65 at 14; *see also* Doc. 70 at 10 ("These text messages, coupled with Plaintiff's inconsistent conduct as set forth in bulleted form in Defendant's Motion, reveal the true secular foundation of [her] opposition to the vaccine and undercut her arguments that her allegedly religious beliefs were sincerely held or that her religious belief—and not her concerns about vaccine safety or socio-political leanings—prompted her to refuse the vaccine.")).[8]

While some of Plaintiff's concerns may be interpreted as secular in nature (*see* Doc. 65-7 (noting that Plaintiff had a "severe localized reaction" to the flu vaccine)), much of her accommodation request and reconsideration request are rooted in her religious/spiritual

---

[8] The text message Defendant takes issue with is a text where Plaintiff told a coworker that "[p]eople with the vaccine are still getting COVID; this is about abuse of power and control." (Doc. 65-1 at 78). The Court will not consider these text messages as Mayo did not consider them before or during the decision making process. *Lavelle-Hayden v. Legacy Health*, 744 F. Supp. 3d 1135, 1152 (D. Or. 2024) ("It is axiomatic that an employer can make decisions based only on the information known to it at the time of the decision." (citations omitted).

objections; such as the use of fetal cell lines in the COVID vaccine. The legitimacy of these faith-based concerns are factual and credibility issues for the jury—not the Court. *See Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1176 n.3 (9th Cir. 2021) ("We may not . . . question the legitimacy of [Plaintiff's] religious beliefs regarding COVID-19 vaccinations."); *Thomas v. Review Bd.*, 450 U.S. 707, 714 (1981) ("[T]he resolution of [whether a belief is religious] is not to turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection."). Plaintiff has therefore, at the very least, identified overlapping secular and religious objections to receiving the COVID-19 vaccine—which "do not place a requested accommodation outside the scope of Title VII." *Thompson v. Asante Health Sys.*, 2023 WL 7348812, at *3 (D. Or. Sept. 21, 2023), *report and recommendation adopted*, 2023 WL 7326496 (D. Or. Nov. 7, 2023) (citing *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws at L.2*, EEOC, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (Oct. 25, 2021) (last visited July 24, 2023)).

In sum, Plaintiff has demonstrated that she had a bona fide religious belief against receiving the COVID vaccine which conflicted with Defendant's policy. *See, e.g., Shafer v. Legacy Health*, 2024 WL 1932544 *3 (D. Or. May 2, 2024) ("Judges in this [circuit] have concluded that [ ]invocation of an anti-abortion stance, guidance from spiritual leaders, and the use of fetal cells in developing COVID-19 vaccines appropriately alleged a bona fide religious belief.") (collecting cases).

Now, because Plaintiff has met her burden, the burden shifts to Mayo to prove that it either "initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Tiano*, 139 F.3d at 681 (citations omitted).

### 3.    Mayo's Good Faith Efforts to Accommodate or Undue Hardship

"Whether an employer has met its statutory burden to initiate a good faith effort to

accommodate an employee's beliefs is a question of fact." *Proctor v. Consol. Freightways Corp. of Delaware*, 795 F.2d 1472, 1477 (9th Cir. 1986) (citing *Hardison*, 432 U.S. at 77); *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1512 (9th Cir. 1989). Defendant does not argue that it initiated good faith efforts to accommodate Plaintiff or that it could not reasonably accommodate her without undue hardship. (*See* Docs. 65, 70). Instead, Defendant "place[s] all of its legal eggs on summary judgment in the first prong of the prima facie basket." (Doc. 69 at 5).

As Defendant itself argues, by failing to address or make an argument on summary judgment, the failing party waives that argument. (Doc. 70 at 3 (citing *Doe v. Dickenson*, 615 F. Supp. 2d 1002, 1010 (D. Ariz. 2009)); *see also Nguyen v. Nissan N. Am., Inc*., 487 F. Supp. 3d 845, 857 (N.D. Cal. 2020) ("Issues raised in a brief which are not supported by argument are deemed abandoned."); *Williams v. Condensed Curriculum Int'l*, 2021 WL 5069946 at *2, (N.D. Cal. Nov. 2, 2021) ("[B]ecause Defendant has given such short shrift to its assertion that a supposed lack of standing to bring a PAGA claim justifies blocking discovery, the undersigned deems this issue as totally undeveloped and therefore abandoned."). Furthermore, the Court will not make legal arguments for the parties. *See Alcantar v. Madden*, 2022 WL 7936002, at *13 (C.D. Cal. Aug. 22, 2022), *report and recommendation* adopted, 2022 WL 4554361 (C.D. Cal. Sept. 28, 2022) (citing *Western Radio Servs. Co. v. Qwest Corp*., 678 F.3d 970, 979 (9th Cir. 2012) (The Court "will not do [a party's] work for it, either by manufacturing its legal arguments, or by combing the record on its behalf for factual support."); *United States v. Williamson*, 439 F.3d 1125, 1138 (9th Cir. 2010) (" 'We will not manufacture arguments for [a party]' who has failed 'to present . . . specific, cogent argument[s] for [the court's] consideration,' especially where 'a host of other issues are presented for review.' ")).

In any event, Defendant does not present any evidence that it initiated good faith efforts to accommodate Plaintiff or that it could not reasonably accommodate her without undue hardship. This showing is Defendant's burden to demonstrate. *Tiano*, 139 F.3d at 681. Because Defendant has failed to demonstrate, or even argue, that it initiated good

faith efforts to accommodate Plaintiff or that such accommodations would create an undue hardship, it has failed to show that it is entitled to summary judgment of Plaintiff's failure to accommodate theory. *See Matsushita*, 475 U.S. at 585–86.

Plaintiff has pled a sufficient religious discrimination claim under a failure to accommodate theory, which Defendant has failed to rebut. The Court therefore denies summary judgment on Plaintiff's failure to accommodate theory and Defendant may not raise it at trial. Next, the Court will address Plaintiff's disparate treatment theory.

### B.    Disparate Treatment

Defendant also argues that Plaintiff has not presented any evidence of disparate treatment. (Doc. 65 at 8). Plaintiff argues in response that she has testified that she "heard" that members of the LDS Church were granted accommodations at a disproportionately high rate. (Doc. 69 at 13). She argues that this testimony is admissible for purposes of summary judgment.[9] (*Id.*) Plaintiff also argues that Defendant "baked" discrimination into its "Religious Accommodation Procedure." (Doc. 69 at 14).

The Court analyzes allegations of disparate treatment based on religion under a three-part framework set out in *McDonnell Douglas*. *See Bodett*, 366 F.3d at 743 (applying the burden shifting framework set forth in *McDonnell Douglas*, 411 U.S. at 93). First, an employee must establish a *prima facie* case of disparate treatment. *Id.* Second, the burden shifts to the employer "to produce some evidence demonstrating a legitimate, nondiscriminatory reason for the employee's [adverse employment action]." *Id.* Third, if the employer meets its burden of production, "any presumption that the [employer] discriminated 'drops from the case,' and the [employee] must then show that the [employer's] alleged reason for termination was merely a pretext for discrimination."

---

[9] "A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002); *see also Cherewick v. State Farm Fire & Cas*., 578 F. Supp. 3d 1136, 1157 (S.D. Cal. 2022) ("Because summary judgment qualifies as a substitute for a trial, and hearsay (absent an exception or exclusion) is inadmissible at trial, a motion for summary judgment may not be supported by hearsay."). However, if the content of the evidence is admissible, it can create a genuine issue for trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) (holding that, at summary judgment, the district court should consider unsworn, inadmissible hearsay statements written by the plaintiff in a diary about her diabetes symptoms to support an ADA discrimination claim).

*Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507–08 (1993)).

A plaintiff can demonstrate a prima facie disparate treatment claim through either (1) the framework set forth in *McDonnell Douglas*; or (2) with direct or circumstantial evidence of discriminatory intent. *See Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003), *as amended* (Jan. 2, 2004). Under *McDonnell Douglas*, unlawful discrimination is presumed if the plaintiff can show that "(1) [s]he is a member of a protected class; (2) [s]he was qualified for h[er] position; (3) [s]he experienced an adverse employment action; and (4) similarly situated individuals outside h[er] protected class were treated more favorably." *Freyd v. Univ. of Oregon*, 990 F.3d 1211, 1228 (9th Cir. 2021) (quoting *Fonseca v. Sysco Food Servs. of Ariz., Inc*., 374 F.3d 840, 847 (9th Cir. 2004)).

Defendant specifically argues that Plaintiff cannot establish the second or fourth elements of a prima facie case of disparate treatment. (Doc. 65 at 9). It further argues that Plaintiff cannot show she was "qualified" because she failed to comply with Mayo's legitimate workplace safety requirements by refusing to comply with its Policy or that similarly situated individuals outside her protected class were treated more favorably. (*Id.*)

Plaintiff argues that she "provided testimony that she had heard on her unit that LDS Church members were being disproportionately granted accommodations (and she identifies one specifically accommodated in the cited testimony Mayo provided), while those of other faiths were not being granted accommodations." (Doc. 69 at 13). She also argues that her testimony "about the LDS members in her unit being granted accommodation and Ms. [Keri] Slegh's agreement that the two Catholics in her unit were not accommodated should be sufficient to create a fact issue on [Plaintiff's] disparate treatment claim (the anti-Catholic religious discrimination theory)." (*Id.* at 14). Plaintiff further argues that

> [B]y "baking" discrimination into its decision matrix based upon certain "magic words" being treated as "automatically" favoring denial of accommodation, Mayo has engaged in the direct discrimination against religion by dictating in advance what beliefs are going to be deemed "sincere" across the board rather than making the individualized assessments required by Title VII. This makes religion a "term" or "condition" of

1    continued employment – the thing that Title VII language expressly forbids.

2    (*Id*.)  The Court construes these arguments as an attempt to demonstrate a prima facie case

3    through direct or circumstantial evidence of discriminatory intent.  *See Vasquez*, 349 F.3d

4    at 640.  Especially since, as Defendant notes, Plaintiff does not address Defendant's

5    argument that she was not qualified for her position.  (*See* Doc. 69 at 13–15; Doc. 70 at 2).

6            **1.    Direct or Circumstantial Evidence of Discrimination**

7            On summary judgment, direct evidence of discrimination is "that which, 'if

8    believed, proves the fact [of discriminatory animus] without inference or presumption.' "

9    *Hittle v. City of Stockton, California*, 76 F.4th 877, 888 (9th Cir. 2023) (quoting *Coghlan*

10   *v. Am. Seafoods Co*., 413 F.3d 1090, 1095 (9th Cir. 2005)).  "Direct evidence comprises

11   'conduct or statements by persons involved in the decision-making process that may be

12   viewed as directly reflecting the alleged discriminatory attitude.' " *Brown v. Alaska*

13   *Airlines, Inc*., 2024 WL 2325058, at *5 (W.D. Wash. May 22, 2024) (quoting *Enlow v.*

14   *Salem–Keizer Yellow Cab Co., Inc*., 389 F.3d 802, 812 (9th Cir. 2004)).  "Such evidence

15   is usually composed of clearly sexist, racist, or similarly discriminatory statements or

16   actions by the employer."  *Id*. (internal quotations and citation omitted).  Furthermore,

17   circumstantial evidence of discrimination "must be 'specific' and 'substantial.' " *France*

18   *v. Johnson*, 795 F.3d 1170, 1175 (9th Cir. 2015).

19           During her deposition, Plaintiff testified that another one of her coworkers "heard

20   that [Defendant] w[as] not readily going to hand out religious exemptions and that [it]

21   wanted 100 percent compliance."  (Doc. 65-1 at 74).  Plaintiff did not verify where her

22   coworker got this information from.  (*Id*.)  Plaintiff also testified that another coworker,

23   "John," was telling other employees that "Mayo was granting religious accommodations

24   to most employees of the LDS religion."  (*Id*. at 91).  Plaintiff does not know "John's" last

25   name.  (*Id*.)  Again, Plaintiff did not verify where this coworker got his information.  (*Id*.)

26   She also admitted that this information may have been obtained "through the rumor mill."

27   (*Id*. at 92).

28           These statements are hearsay because they are out of court statements Plaintiff is

offering for the truth of the matter asserted. *See* Fed. R. Evid. 802. A district court "may only consider admissible evidence in ruling on a motion for summary judgment. Unauthenticated documents and hearsay evidence are inadmissible, and consequently, may not be considered on summary judgment." *Moore v. Thomas*, 653 F. Supp. 2d 984, 991 (N.D. Cal. 2009) (citing *Orr*, 285 F.3d at 773). These statements are therefore inadmissible hearsay which the Court will not consider. *See id.*

Plaintiff also testified that, based on what she had heard from her peers, the LDS faith was receiving more preferential treatment. (Doc. 65-1 at 104). When asked if she had any evidence of this, Plaintiff stated that her friend, Jodi Raney, is an LDS Mormon and received an accommodation. (*Id.*) She also knows of at least one other Catholic who was denied an accommodation: Morgan Rawlins. (*Id.* at 105). Plaintiff never saw either of these employees' accommodation requests, however. (*Id.*) Plaintiff answered that she did not remember whether anyone at Mayo had ever said anything negative to her about her religion or her religious beliefs. (*Id.* at 105–06).

Mayo's procedure's stated purpose is to "establish a framework for requesting and engaging in the interactive process to consider and to provide qualified applicants and individuals with sincerely held religious beliefs, observances, or practices reasonable religious accommodations." (Doc. 68 at 2). The Procedure gives the following directions for reviewing accommodation requests:

- Reviewers need to look at the totality of the form and responses.
- If "Supports Approval" or "Supports Denial" is concluded in one question, it is not a singular decision. You must first evaluate other questions before making an overall decision.
- Reviewers should verify that the employee's answers demonstrate they have a sincerely held religious belief and explain how their belief conflicts with the vaccine requirement. Noted below is guidance related to issues that commonly arise.
- Please escalate anything that doesn't fall within this guidance or if something just doesn't feel right

(*Id.* at 14). It also offers the following guidance regarding questions 1, 2 and 4 of the

accommodation request form:

> **Approval**: Sufficient explanation of sincerely held religious belief and the conflict of required vaccination. [Questions] #1, 2 and 4 meet the threshold, factoring in answers to #5 & 8. Must meet all 3: (Q#1) The individual describes their religious belief, (Q#2) Provides evidence it is a sincerely held religious belief; and (Q#4) Identifies actual conflict between practice and policy (vaccine requirement).

> **Denial**: Can't conclude there is a sincerely held religious belief and/or conflict between belief and required vaccination

(*Id*.)   As for question five, whether an employees religious beliefs prevent them from receiving all vaccines or only some vaccines, the Procedure provides that an approved response for only the COVID vaccine would be "Anti-Christ, Mark of the Beast." (*Id*. at 15). For a "some but not all vaccines" response, a response which supports approval would be answers that "cite fetal cells as their conflict" and:

- Use words that reference all stages (development, testing and research).
- Or, if they are vague, stating "fetal cells were used" and don't reference a specific stage.
- Or use words such as: derived from, or, research, or testing.

(*Id*.)

Defendant has also set forth evidence of a Catholic employee who was granted an accommodation.  (Doc. 65-36 at 35).  That employee stated the following when asked to describe her sincerely held religious belief: "[b]eing Catholic has taught me how to take a look at life in different ways.  My family has followed our religious believes since before I was born and still to this day.  My religion also affects my outlook on abortion, while I believe it is the women's choice, for me personally this would be against my religion to have one as it causes harm to the unborn child."  (*Id*.)  She also stated the following to describe the conflict she had with the COVID vaccine: "Revelations 13:16-17 and Revelations 14:9-12 are just one example of how the vaccine goes against my religion. The requirement to get the COVID-19 vaccine conflicts with my religious beliefs because it mirrors what it says in the bible."  (*Id*.)   Defendant also notes that it "received

approximately 3,850 Accommodation Requests and approved approximately 66%" of the requests for accommodations.  (Doc. 65 at 5).

Plaintiff has failed to sufficiently demonstrate any evidence of discriminatory animus in Mayo's decision.  Plaintiff has not supplied any evidence from those involved in the decision-making process that may be viewed as directly reflecting a discriminatory attitude towards her religion.  *See Brown*, 2024 WL 2325058, at *5.  Furthermore, the evidence she has provided would require major inferences to show discriminatory animus.  *Hittle*, 76 F.4th at 888.  For example, much of Plaintiff's evidence is based on conjecture or speculation—such as what she heard from coworkers but never verified—which cannot defeat summary judgment.  *See Villodas v. HealthSouth Corp.*, 338 F. Supp. 2d 1096, 1104–05 (D. Ariz. 2004) ("Reliance on mere speculation, conjecture, or fantasy cannot defeat a motion for summary judgment.") (citing *The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1151–52 (9th Cir.1988)).

The summary judgment stage is the " 'put up or shut up' moment in a lawsuit, when the nonmoving party must show what evidence it has that would convince a trier of fact to accept its version of events." *Arguedas*, 2024 WL 253644, at *2.  Plaintiff has not set forth evidence such as "clearly . . . discriminatory statements or actions by" Mayo, so, she has failed to demonstrate direct evidence of discriminatory animus.  *See Brown*, 2024 WL 2325058, at *5.  Furthermore, this evidence is neither specific nor substantial, therefore, Plaintiff has also failed to demonstrate circumstantial evidence of discriminatory animus.  *See France*, 795 F.3d at 1175.  In sum, Plaintiff has failed to demonstrate a prima facie disparate treatment claim through direct or circumstantial evidence of discriminatory intent.  *See Vasquez*, 349 F.3d at 640.

The Court will next review the elements of the *McDonnell Douglas* framework that Defendant argues Plaintiff has failed to demonstrate—beginning with the second element: whether Plaintiff was qualified for her position.

### 2.    Whether Plaintiff was Qualified

Defendant argues that Plaintiff cannot show she was qualified for her position

because she failed to comply with Mayo's legitimate workplace safety requirements by refusing to comply with its Policy. (Doc. 65 at 9). Plaintiff does not address this issue. (*See* Doc. 69 at 13–15).

A plaintiff "***must*** show that [s]he completed h[er] job 'well enough to rule out the possibility that he was fired for inadequate job performance.' " *Angelucci v. Mayorkas*, 2021 WL 4523690, at *3 (S.D. Cal. Oct. 4, 2021) (quoting *Sengupta v. Morrison-Knudsen Co., Inc.*, 804 F.2d 1072, 1075 (9th Cir. 1986) (emphasis added). Because Plaintiff has not alleged or argued that she was qualified for her position, she has abandoned her ability to demonstrate a prima facie case through the *McDonnell Douglas* framework. *See Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (noting that the plaintiff "abandoned her other two claims by not raising them in opposition to the [defendant's motion for summary judgment.").

In sum, Plaintiff has failed to set forth specific facts showing that there is a genuine issue for trial as to her disparate treatment claim, therefore, this claim cannot survive summary judgment. *See Anderson*, 477 U.S. at 250

## C.    Plaintiff's Unopposed Motion to Seal (Doc. 67).

Plaintiff also seeks to file four of the exhibits it attached to its Response (Doc. 69) under seal (Doc. 67). The proposed exhibits, Exhibits A through D, were disclosed as "confidential" by Defendant. (*Id*. at 1). Defendant does not oppose Plaintiff's Motion to Seal, however, because the Court relies heavily on these exhibits in its analysis and because these exhibits are redacted the Court will deny the Motion.

The Court's analysis regarding a motion to seal begins with a "strong presumption in favor of [public] access." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (explaining the public has a general right of access "to inspect and copy. . . judicial records and documents"). "[A] party seeking to seal a judicial record then bears the burden of overcoming this strong presumption.'" *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1095 (9th Cir. 2016) (quoting *Kamakana*, 447 F.3d at 1178). To meet this

burden, a party seeking to file a document under seal must give compelling reasons supported by specific factual findings. *Id*. General allegations of confidentiality, "without further elaboration or any specific linkage with the documents," do not satisfy the moving party's burden. *Kamakana*, 447 F.3d at 1184. "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id*. at 1179.

Plaintiff seeks to introduce these exhibits under seal because they were "disclosed by Defendant under the 'Confidential' label." (Doc. 67 at 1). From the Court's review, these exhibits appear to contain Defendant's internal policies as they pertain to its COVID-19 vaccination requirements and religious exemption process. (Doc. 68). However, Plaintiff has not offered any "compelling reasons" for these exhibits to remain sealed other than Defendant's own characterization. This will not suffice. *See Kamakana*, 447 F.3d at 1184 (stating that general allegations of confidentiality, "without further elaboration or any specific linkage with the documents," do not satisfy the moving party's burden). While these exhibits do contain the internal business policies of Defendant, they do not on their face contain any sensitive information or trade secrets. *Cf. BBK Tobacco & Foods LLP v. Cent. Coast Agric. Inc*., 2022 WL 1000183, *7 (D. Ariz. Apr. 4, 2022) (finding "good cause exists to seal the parties' proprietary and non-public financial data"). Moreover, the lodged documents already contain redactions, which the Court will allow. Thus, Plaintiff has not overcome the strong presumption in favor of public access—therefore; the Court must deny Plaintiff's Motion. *See Kamakana*, 447 F.3d at 1178; *Ctr. for Auto Safety*, 809 F.3d at 1095.

**IV.    Conclusion**

For the reasons stated above, the Court will enter summary judgment in Defendant's favor on Plaintiff's disparate treatment theory but not her failure to accommodate theory brought under her religious accommodation claim. It also denies Plaintiff's Motion to Seal exhibits A through D as Plaintiff has not overcome the strong presumption in favor of public access.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 65) is **GRANTED in part** and **DENIED in part**.

**IT IS ALSO ORDERED** that Plaintiff's Unopposed Motion for Leave to File Exhibits Under Seal (Doc. 67) is **DENIED**.  The Clerk is directed to file the lodged exhibits at Doc. 68 on the public docket.

**IT IS FINALLY ORDERED** that in light of Plaintiff's remaining claims, the parties are directed to comply with Paragraph 10 of the Rule 16 Scheduling Order (Doc. 10 at 6–7) regarding notice of readiness for pretrial conference.  Upon a joint request, the parties may also seek a referral from the Court for a settlement conference before a Magistrate Judge.

Dated this 11th day of March, 2025.

Honorable Diane J. Humetewa
United States District Judge